# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

James R. Boughton, Jr.,        )
     Plaintiff,           )
                       )
v.                      )            1:20-cv-938 (TSE/JFA)
                       )
The Geo Group Inc., et al.,    )
     Defendants.        )

## <u>MEMORANDUM OPINION</u>

At issue in this matter is a Motion to Dismiss filed by Defendants Clarke, Robinson, Morris, Welch, and Brock. [Dkt. No. 63]. James R. Boughton, Jr., ("Boughton" or "Plaintiff") a Virginia inmate, filed this <u>pro se</u> lawsuit under 42 U.S.C. § 1983 alleging violations of his First Amendment right to free exercise of his religion, his Fourteenth Amendment right to equal protection, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") while he was in custody at the Lawrenceville Correctional Center ("LVCC"). The LVCC is operated by The GEO Group Inc., which is named as a defendant, under a contract with the Commonwealth of Virginia. After Plaintiff filed his first complaint in August 2020, the complaint was screened and deficiencies were noted. Plaintiff then filed an amended complaint on June 1, 2021 (the "first amended complaint") that alleged ten claims against nine defendants: The GEO Group Inc. ("GEO Group"); five employees of the Virginia Department of Corrections ("VDOC") (Harold Clarke, A. David Robinson, Bernard Morris, Melissa Welch, and Ashton Brock); and three employees and former employees of the GEO Group (Michael Breckon, Marilyn Shaw and Jennifer Walker). [Dkt. No. 11]. Plaintiff's claims stem from four sets of circumstances: (1) the denial of a request to approve a religious volunteer on July 11, 2019; (2)

the September 17, 2019 denial of a request for microscope (with slides) as a religious item; (3) a failure to provide Plaintiff with meals before a fast on February 22, 2020; and (4) an allegation that Defendants engaged in a pattern of conduct in which the weekly meetings and special events of Plaintiff's religious group, the Nation of Gods and Earths ("NGE"), were cancelled while other religious groups were not subjected to the same pattern of conduct.

In response to Plaintiff's first amended complaint, the five VDOC employees—Defendants Clarke, Robinson, Brock, Morris, and Welch—filed motions to dismiss with supporting briefs. [Dkt. Nos. 30, 31, 34, 35]. Thereafter, Plaintiff was advised of his opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and he then filed a motion to amend and an amended complaint on January 10, 2022. [Dkt. No. 43]. The VDOC employees' motions to dismiss were denied, without prejudice, on August 5, 2022, and the Court granted Plaintiff leave to file the January 10, 2022 amended complaint (the "second amended complaint"). [Dkt. No. 51]. On September 19, 2022, Defendants Clarke, Robinson, Brock, Morris, and Welch filed the motion to dismiss currently at issue.[1] [Dkt. No. 63]. Plaintiff was advised of his opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), and he filed a declaration and a brief in opposition to the motion to dismiss. [Dkt. Nos. 71–73]. Accordingly, this matter is now ripe for disposition.

Plaintiff's second amended complaint raised the same ten claims as the first amended complaint, which may be summarized as follows with respect to the party-defendants to the Motion to Dismiss currently at issue:

---

[1] The remaining defendants have filed a motion for summary judgment [Dkt. No. 48] that will be addressed in a separate Memorandum Opinion.

I.     Defendants Clarke, Robinson, and Brock violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution through their "enforcement of OP 027.1," a VDOC operating procedure which sets forth application requirements for religious volunteer visitors, when they denied an application to serve as a religious volunteer visitor from a man known as Self Born Allah.

II.    Defendants Clarke, Robinson, and Brock also violated RLUIPA when they "enforce[d] OP 027.1" and denied Self Born Allah's application to serve as a religious volunteer visitor.

III.   Defendants Clarke, Robinson, Brock, Welch, and Morris violated the Equal Protection Clause of the Fourteenth Amendment through their "enforcement of OP 841.3(VIII)(B)" when they denied Plaintiff's request for a microscope with slides as a religious item.

IV.    Defendants Clarke, Robinson, Brock, Welch, and Morris also violated RLUIPA when they "enforce[d] OP 841.3(VIII)(B)" and denied Plaintiff's request for a microscope with slides as a religious item.

V.     Defendants Clarke, Robinson, and Brock violated the Free Exercise Clause of the First Amendment through their "denial of [Plaintiff]'s required meals to observe the NGE fast for Allah's Physical Birth."

VI.    Defendants Clarke, Robinson, and Brock also violated the Equal Protection Clause of the Fourteenth Amendment through their "denial of [Plaintiff]'s required meals to observe the NGE fast for Allah's Physical Birth."

VII.   Defendants Clarke, Robinson, and Brock violated RLUIPA through their "denial of [Plaintiff]'s required meals to observe the NGE fast for Allah's Physical Birth."

VIII.  Defendants Clarke and Robinson's "pattern of cancelling NGE weekly meetings and special events establishes a pattern of behavior in violation of the Free Exercise Clause of the First Amendment of the United States Constitution."

IX.    Defendants Clarke and Robinson's "pattern of cancelling NGE weekly meetings and special events establishes a pattern of behavior in violation of the Equal Protection Clause of the Fourteenth Amend of the United States Constitution."

X.     Defendants Clarke and Robinson's "pattern of cancelling NGE weekly meetings and special events establishes a pattern of behavior in violation of" RLUIPA.

[Dkt. Nos. 11 at 19–22; 43 at 28–31]. For the reasons described below, Defendants' Motion to Dismiss must be granted in part and denied in part.

3

## I. Facts Alleged in Plaintiff's Second Amended Complaint

The facts alleged in Plaintiff's second amended complaint are set forth below. For the

purposes of deciding Defendants' Motion to Dismiss, the facts alleged in Plaintiff's second

amended complaint are accepted as true and construed in the light most favorable to Plaintiff.

SD3, LLC v. Black & Decker (US) Inc., 801 F.3d 412, 418 (4th Cir. 2015).

1.      Plaintiff is currently in custody at LVCC. [Dkt. No. 43 at ¶ 3].

2.      Plaintiff is an adherent of the NGE religious group. [Dkt. No. 43 at ¶ 20].

3.      LVCC is operated by GEO Group under a contract with the Commonwealth of

Virginia. [Dkt. No. 43 at ¶¶ 6, 32].

4.      Defendant Clarke is the Director of the VDOC. [Dkt. No. 43 at ¶ 4].

5.      Defendant Robinson is the VDOC Chief of Operations. [Dkt. No. 43 at ¶ 5].

6.      Defendant Brock is the former Chaplain at LVCC. [Dkt. No. 43 at ¶ 9].

7.      Defendant Welch is the Operations Support Manager and is responsible for

"managing the support operations" for the VDOC's Faith Review Committee. [Dkt. No. 43 at

¶ 10].

8.      Defendant Morris is an advisor to the Faith Review Committee. [Dkt. No. 43 at

¶ 11].

9.      Defendant Robinson issued a memorandum on May 20, 2019 amending VDOC

Operating Procedure 841.3 ("OP 841.3") stating that NGE was deemed a recognized faith group

and that NGE was not to be discriminated against. Thus, NGE is one of several religious groups

now approved to operate in VDOC facilities pursuant to OP 841.3. [Dkt. No. 43 at ¶ 18].

*Denial of Self Born Allah's Volunteer Application*

10.     Upon Plaintiff's request, a man known as Self Born Allah applied for approval as a volunteer visitor at LVCC to facilitate religious observation of the tenets of the NGE faith in 2019. Self Born Allah contacted Defendant Brock "and filed the necessary paperwork to be approved as a volunteer visitor on behalf of the NGE." [Dkt. No. 43 at ¶ 19].

11. Self Born Allah has been a member of NGE for 23 years, but he was in VDOC custody for 14 years until he was paroled in 2008. Self Born Allah is able to teach NGE tenets, and LVCC has approved "other similarly situated individuals with criminal records and/or who have served time in" VDOC custody "as volunteer visitors for other faith groups." [Dkt. 43 at ¶ 20].

12.     On July 11, 2019, Marilyn Shaw, a defendant named in this § 1983 suit but not a party to the Motion to Dismiss currently at issue, informed Plaintiff that Self Born Allah's application was denied due to his criminal background. [Dkt. No. 43 at ¶ 19].

*Denial of Request for a Microscope with Slides*

13.     On or about April 23, 2019, Plaintiff submitted a request for access to a microscope with slides for religious purposes. [Dkt. No. 43 at ¶ 21]. Marilyn Shaw "recommended disapproval based upon security concerns" because the microscope had many individual parts and could be used as a "potential weapon." [Dkt. No. 11-1 at 2]. Shaw's recommendation was forwarded to the Faith Review Committee. [Id.]. On September 17, 2019, the VDOC Faith Review Committee disapproved of Plaintiff's request for a microscope. [Id. at 1]. Defendant Morris sent Plaintiff a notification of this denial "on behalf of Melissa Welch, Operations Manager." [Id.]. Plaintiff alleges that Defendant Brock was also involved in the denial of the religious item. [Dkt. No. 43 at ¶ 29].

*Cancellation of NGE Meetings*

14.     On June 15, 2019, the NGE program to celebrate Honor Day, a religious holiday for NGE adherents, was rescheduled because a lockdown was in effect. [Dkt. No. 11-1 at 8]. All religious programs at LVCC were cancelled except for special events that had been preapproved prior to the lockdown. [Id. at 10]. The Honor Day celebration was rescheduled for June 29, 2019. [Id. at 6].

15.     On Friday, January 31, 2020, the regularly scheduled NGE weekly service for 8:30 a.m. was cancelled due to an institutional lockdown. [Dkt. No. 11-1 at 20]. LVCC attempted to reschedule the service at 6:30 p.m., but Plaintiff was told after 7:30 p.m. that the service had been rescheduled for the next day, Saturday. The service was never held. [Dkt. No. 11-1 at 18]. Plaintiff filed an informal complaint on February 5, 2020, but did not receive a response until February 27, 2020. [Id. at 19]. The response indicated that if a weekly service is cancelled it is "not rescheduled." [Id. at 20].

16.     On March 20, 2020, the regularly scheduled NGE weekly service was cancelled due to an institutional lockdown. All programs, not just NGE's, were cancelled on March 20, 2020. [Dkt. No. 11-6 at 41].

17.     Plaintiff's grievance stated that Shaw cancelled the service on March 20, 2020 because counselors and unit managers were directed to assist in delivering "Holiday Packages." [Dkt. No. 11-1 at 39].

*Failure to Provide Meal Service on February 22, 2020*

18.     On February 22, 2020, LVCC cancelled an NGE event celebrating the Physical birth of Allah. [Dkt. No. 11-1 at 28]. On February 22, 2020, Plaintiff was not provided a pre-sunrise breakfast before the beginning of his NGE fast or a meal after the fast ended at sunset.

Plaintiff alleges that Defendant Brock was responsible for providing him his pre-sunrise breakfast before the beginning of his NGE fast or a meal after the fast ended at sunset. [Dkt. No. 43 at 19, 22].

## II. Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." ACAFin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). The Federal Rules of Civil Procedure require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." ACAFin. Guar. Corp., 917 F.3d at 211. Instead, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. And "[a]lthough the truth of well-pleaded facts is presumed, a court is not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Riddick v. Watson, 503 F. Supp. 3d 399, 410 (E.D. Va. 2020) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).

### III. Analysis

Defendants argue that Plaintiff has failed to allege sufficient facts to establish that Defendants have violated the Free Exercise Clause, Plaintiff's right to equal protection, or Plaintiff's rights under RLUIPA. The Motion to Dismiss seeks to have Clarke, Robinson, and Brock dismissed as party-defendants in this action, and also moves to dismiss Claims I, II, IV, V, and VII against all VDOC Defendants. Each of Defendants' arguments are analyzed below. In short, Defendants Clarke and Robinson must be dismissed as party-defendants to this lawsuit. Furthermore, Defendant Brock must be dismissed as a party-defendant with respect to all claims except Claim III. Furthermore, Defendant's Motion to Dismiss Claims I, II, IV, V, and VII must be granted with respect to all VDOC Defendants. Accordingly, the only claim that remains with respect to the VDOC Defendants is Claim III.

### A. Defendant Clarke

First, Defendants persuasively argue that Defendant Clarke must be dismissed as a party-defendant to this § 1983 and RLUIPA action. In order to state a plausible claim for relief under § 1983 and RLUIPA, Plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or RLUIPA. Iqbal, 556 U.S. at 676; Lovelace, 472 F.3d at 194 (holding that in an RLUIPA action, the Plaintiff must allege that the Defendant acted with the "requisite intent," which is greater than simple negligence). Plaintiff has plainly failed to do so here. In his pleadings, Plaintiff has not alleged any action by Defendant Clarke that occurred during the relevant time period, nor has Plaintiff alleged any facts connecting Defendant Clarke to the alleged violations of Plaintiff's rights or alleging that Defendant Clarke was aware of the specific conduct that Plaintiff alleges in his second amended complaint. Because Plaintiff has not alleged that Defendant Clarke was personally involved in

any deprivation of Plaintiff's rights, Defendant Clarke must be dismissed as a party-defendant to this action.

Seeking to avoid this conclusion, Plaintiff argues that Defendant Clarke is a "supervisor" and is therefore responsible for ensuring that discrimination on the basis of race, religion, or national origin does not occur in the implementation of VDOC policies in all VDOC facilities. [Dkt. No. 43 at ¶ 14]. According to Plaintiff, Defendant Clarke has failed to fulfill this responsibility because prior to 2017, the VDOC did not recognize NGE as a faith group. After litigation in 2017, the VDOC approved NGE as an officially recognized faith group within VDOC facilities.[2] Plaintiff alleges that Defendant Clarke, as a supervisor, had a "duty" to "provide [his] subordinates with oversight and guidance for implementing the revised policy as it concerned the NGE," and that Clarke failed to do so. [Id. at ¶ 17]. In his opposition to the Defendant's motion to dismiss, Plaintiff repeats his argument that Clarke failed "to reverse the culture of discrimination" that existed against NGE members in 2017. [Dkt. No. 71 at 2].

Plaintiff has not adequately pled a claim for supervisory liability against Defendant Clarke because Plaintiff has not alleged that any actions by Clarke connect Clarke to the alleged discriminatory conduct in Plaintiff's second amended complaint. Instead, Plaintiff only references conduct by Defendant Clarke that occurred in prior to 2017, even though all of the claims in Plaintiff's second amended complaint involve acts of other defendants at LVCC that occurred over two years later in 2019 and 2020. As the Fourth Circuit has explained, "[a]lthough

---

[2] The Western District of Virginia recently summarized the prior litigation regarding NGE that Plaintiff references in his second amended complaint. See Asiatic Royalprince Allah v. Kiser, No. 7:19cv633, 2021 U.S. Dist. LEXIS 60050, *9-10 (W.D. Va. Mar. 29, 2021). As the Western District of Virginia explained, "[p]rior to 2017, NGE was classified as an STG [Security Threat Group]. In 2017, this changed following the decision in Coward v. Robinson, 276 F. Supp. 3d 544, 576 (E.D. Va. 2017), which ordered VDOC 'to remove the STG designation from the NGE, recognize it as a religion, and afford it the rights and privileges' of all other offender religious programs. As a result, VDOC approved NGE as a religious group, and 'VDOC's Security Threat Unit took measures to remove the [STG] designation from any offender who was designated as a member of an STG solely on the basis of his or her affiliation with NGE." Id.

§ 1983 must be read against the background of tort liability that makes a man responsible for the

natural consequences of his actions, liability will only lie where it is affirmatively shown that the

official charged acted personally in the deprivation of the plaintiffs' rights." Vinnedge v. Gibbs,

550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted); see

Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) ("Supervisory officials may be held liable in

certain circumstances for the constitutional injuries inflicted by their subordinates"). Thus, in

order to establish supervisory liability under § 1983, Plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
> was engaged in conduct that posed a pervasive and unreasonable risk of
> constitutional injury to citizens like the plaintiff; (2) that the supervisor's response
> to that knowledge was so inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices []; and (3) that there was an
> affirmative causal link between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

Jennings v. Univ. of N.C., 444 F.3d 255, 281 (4th Cir. 2006). The allegations in the second

amended complaint do not satisfy any of the three components of supervisory liability and do not

establish that Clarke had any involvement in or knowledge of the denial of the microscope, the

denial of volunteer visitor status for First Born Allah, the failure to provide meals as part of

Plaintiff's fast on February 22, 2020, or any of the cancellations of the weekly meetings or

events. Thus, Plaintiff has not adequately pled any claim against Defendant Clarke, and

Defendant Clarke will be dismissed as a party to this lawsuit.

### B. Defendant Robinson

Plaintiff also alleges that Defendant Robinson violated his rights based upon supervisory

liability. As with Defendant Clarke, Plaintiff does not identify or allege any facts that show that

Defendant Robinson knew about any of the specific conduct upon which Plaintiff's claims are

based. The allegations do not establish that Robinson had any involvement in or knowledge of

the denial of the microscope, the denial of volunteer visitor status for First Born Allah, the failure

to provide meals as part of Plaintiff's fast on February 22, 2020, or any of the cancellations of the NGE weekly meetings or events. Thus, for the same reasons discussed with respect to Defendant Clarke, Defendant Robinson's motion to be dismissed as a party-defendant will be granted and Defendant Robinson will be dismissed as a party to this lawsuit.

### C. Claims I and II

Defendants next argue that Claims I and II, which concern the denial of Self Born Allah's application to serve as a volunteer visitor at LVCC, must be dismissed for failure to state a claim under either the Equal Protection Clause or RLUIPA. While Plaintiff has relied upon the same factual allegations for Claim I and Claim II, the elements of each claim are distinct and analyzed separately below. Simply put, both Claim I and Claim II must be dismissed.

First, Claim I alleges that Defendants' denial of Self Born Allah's volunteer visitor application violated the Equal Protection Clause of the Fourteenth Amendment. To succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated *and* that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added). Only if he has satisfied both elements of an equal protection claim will a court consider, in the prison context, whether a classification was "reasonably related to legitimate penological interests." Id. at 655 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

To begin with, Claim I must be dismissed because Plaintiff has failed to allege that he has been treated differently from others with whom he is "similarly situated." Morrison, 239 F.3d at 654. Plaintiff has not alleged that *Plaintiff* himself was treated differently from other offenders at LVCC. Instead, Plaintiff only alleges that a third party—Self Born Allah—was treated differently from other religious visitor applicants. Self Born Allah applied to be a volunteer

visitor and was denied, not Plaintiff. [3] Thus, Plaintiff fails to state a claim for relief in Claim I because Plaintiff has not plausibly alleged that Plaintiff himself was treated differently than a similarly situated prisoner.

Moreover, even assuming that the denial of Self Born Allah's application provides a basis to infer that Plaintiff has been treated differently from other NGE members at other VDOC facilities, Plaintiff's equal protection claim still fails because Plaintiff has failed to allege that the unequal treatment was the result of intentional discrimination. Indeed, Plaintiff states in his second amended complaint that Self Born Allah's application was denied due to Self Born Allah's "background," and admits that Self Born Allah served 14 years in VDOC custody. [Dkt. No. 43 at ¶¶ 19–20]. Plaintiff never alleges in any of his pleadings that Self Born Allah's application was denied due to Self Born Allah's affiliation with NGE. Thus, Plaintiff has not alleged any intentional discriminatory motivation on behalf of Defendants in denying Self Born Allah's application.

Finally, Claim I must be dismissed for the additional reason that the denial of Self Born Allah's application is reasonably related to legitimate penological interests. As the Fourth Circuit has explained, even if a plaintiff plausibly alleges that he has been treated differently from others and that the unequal treatment was the result of intentional discrimination, "that showing does not secure the claim, as the plaintiff must *also* plausibly allege that the disparity was not justified under the appropriate level of scrutiny." Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020) (emphasis added). Because of the "unique health and welfare concerns in the prison context," courts apply a "deferential standard" of scrutiny, and "[u]nder this deferential standard, the

---

[3] To the extent Plaintiff is trying to raise a claim on Self Born Allah's behalf, any such claim must fail. See Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot assert the legal rights or interests of third parties.").

prisoner must allege that 'the disparate treatment [was not] reasonably related to any legitimate penological interests.'" Id. (quoting Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002)). This "deferential standard" is applied "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny" outside of the prison context, because "courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." Veney, 293 F.3d at 732 (quoting Morrison v. Garraghty, 239 F.3d 648, 655–56 (4th Cir. 2001)). Thus, in determining whether a policy is "reasonably related to legitimate penological interests" for purposes of an equal protection claim, the Fourth Circuit instructs district courts to look to three factors:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it." Second, a court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Third, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."

Fauconier, 966 F.3d at 277–78 (quoting Turner v. Safley, 482 U.S. 78, 89–91 (1987)).

Plaintiff has failed to allege plausibly that the denial of Self Born Allah's application was not justified under the appropriate level of scrutiny. Instead, all three factors indicate that in this case, the VDOC policy resulting in the denial of Self Born Allah's application is reasonably related to legitimate penological interests and does not run afoul of the Equal Protection Clause. The VDOC's policy of requiring approval for volunteer applicants, and the LVCC's denial of Self Born Allah's application, is rationally related to prison security, and Plaintiff has not alleged otherwise. Indeed, courts considering similar factual circumstances have on numerous occasions held that prisons do not violate the Constitution in prohibiting visitors, including religious

teachers, from visiting with offenders because of the visitor's criminal history.[4] Moreover, Plaintiff has not alleged that VDOC policy prohibits *other* NGE elders from being approved for religious volunteer designation at LVCC. Thus, Claim I must be dismissed.

Claim II, which alleges that the denial of Self Born Allah's volunteer application violated RLUIPA, also fails to state a claim. To state a claim under RLUIPA, a prisoner must show that he takes part in a religious exercise and that the State's actions have substantially burdened that exercise. Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006). Only if the prisoner satisfies those elements must the State then prove that its actions were the least restrictive means of furthering a compelling governmental interest. Id. Thus, pursuant to this analysis, Plaintiff bears the initial burden of establishing that his religious exercise was substantially burdened. 42 U.S.C. § 2000cc-1(a). A "substantial burden" occurs under RLUIPA if a prison policy "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or ... forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion ... on the other hand." Lovelace, 472 F.3d at 187. "[A]t a minimum," the substantial burden test requires that a "plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." Dellinger v. Clarke, 172 F. Supp. 3d 898, 902 (W.D. Va. 2016) (quoting Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007)). And

---

[4] See, e.g., Pippins v. Adams County Jail, 851 F. Supp. 1228, 1234 (C.D. Ill. 1994) (explaining that a prison official's refusal to permit a minister to visit an inmate satisfies Turner's standard because "obvious prison concerns dictate against allowing paroled felons to meet with" inmates); Johnson-Bey v. Lane, 863 F.2d 1308, 1310 (7th Cir. 1988) (explaining that a prison need not permit "convicted felons, frocked or unfrocked, to conduct religious services in the prison"); Roseboro v. Gillespie, 791 F. Supp. 2d 353, 372 (S.D.N.Y. 2011) ("[I]t is obvious that regulating visits from individuals with criminal backgrounds is essential to prison discipline and order."); Malone v. Caruso, 470 F. App'x 501, 502 (6th Cir. 2012) (affirming prison's denial of visiting privileges for offender's wife based on her status as a felon); Hicks v. Erie County, 65 F. App'x 746, 749 (2d Cir. 2003) (holding that policy excluding paralegals with felony convictions from privileged access in the prison "was a lawful policy" that did not violate the Constitution).

"[n]o substantial burden occurs if the government action merely makes the 'religious exercise more . . . difficult,' but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion." Id. at 902–03 (quoting Living Water Church of God v. Charter Twp. Of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007)).

Plaintiff's second amended complaint fails to allege that the denial of Self Born Allah's volunteer application substantially burdened his practice of religion. Plaintiff alleges that Self Born Allah is an "elder" within the NGE religion and is "qualified to teach LVCC offenders the tenets and curriculum of NGE." [Dkt. No. 43 at ¶ 20]. This establishes, at best, only that Plaintiff does not have the assistance of a *particular* NGE elder in his efforts to learn more about his NGE faith. But RLUIPA does not require that prisons provide offenders with the "religious advisor of their choice." Turner, 836 F. App'x at 230; see also Blair-Bey, 963 F.3d at 164. Nor has Plaintiff pled that he cannot obtain his stated religious education objectives through correspondence with Self Born Allah or through meeting with other NGE religious authorities. Indeed, Plaintiff clearly has the ability to communicate with Self Born Allah, because Plaintiff has pled that he contacted Self Born Allah even *before* Self Born Allah submitted his volunteer visitor application.[5] [Dkt. 43 at ¶ 19]. Nor has Plaintiff alleged that Plaintiff has been prevented from writing letters to Self Born Allah or speaking with Self Born Allah over the phone. Moreover, there is no allegation that any other NGE elder could not apply to become a volunteer visitor at LVCC. At best, the denial of Self Born Allah's application was a mere "inconvenience" to

---

[5] Plaintiff admits that he communicated with Self Born Allah "in early 2019," which establishes that he has a viable means of communication with Self Born Allah even though Self Born Allah's request for volunteer status was denied. [Dkt. Nos. 11 at 20; 43 at 15]. To be sure, Plaintiff was able to obtain a statement from Self Born Allah's statement to file as part of this civil action, demonstrating that Plaintiff has the ability to communicate with Self Born Allah even if he is not approved as a visitor. [Dkt. No. 60-1 at 3]. See Rowe v. Ind. Dep't of Corr., No. 1:11cv524, 2014 U.S. Dist. LEXIS 123884, *18 (S.D. Ind. 2014) (where inmate could contact the pastor who had been denied visitation privileges by mail and phone, inmate failed to establish he had been substantially burdened under RLUIPA or the Free Exercise Clause).

Plaintiff's religious practice. Dellinger, 172 F. Supp. 3d at 902. Thus, Plaintiff has not pled adequately that the denial of Self Born Allah's volunteer application placed a substantial burden on his practice of his religion. For that reason, Plaintiff has failed to state a claim under RLUIPA and Claim II will be dismissed.

Finally, both Claims I and II must be dismissed for the additional reason that Plaintiff has failed to plead adequately that any of the named VDOC Defendants had any direct involvement in denying Self Born Allah's volunteer application. To state a claim under § 1983, the plaintiff must show personal involvement by each defendant in the alleged violation of plaintiff's constitutional rights. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in civil rights cases is "personal, based upon each defendant's own constitutional violations"). To establish liability for the denial of Self Born Allah's application, Plaintiff alleges that Self Born Allah "contacted Chaplain Brock and filed the necessary paperwork," and that Marilyn Shaw, who is not a VDOC party to the Motion to Dismiss currently at issue here, notified Plaintiff that the application was denied. [Dkt. 43 at ¶¶ 19–20, 36]. Plaintiff also alleges, in a conclusory statement, that Defendant Brock "had direct involvement" in denying Self Born Allah's application, [Dkt. No. 43 at ¶ 29]. But Plaintiff has not alleged any facts connecting Brock to the denial of the application, and the exhibits attached to Plaintiff's complaint do not indicate that Defendant Brock had any role in denying the application. [Dkt. No. 11-1 at 11–15]. Plaintiff's conclusory statement that Brock had "direct involvement" must be rejected, given that the only facts Plaintiff pled in connection to Claims I and II are that (1) Self Born Allah contacted Defendant Brock and (2) Shaw notified Plaintiff that Self Born Allah's application was denied. SD3, LLC, 801 F.3d at 422 (explaining that courts do not "accept as true a legal conclusion couched as a factual allegation," and that courts do not accept "unwarranted inferences,

unreasonable conclusions, or arguments"). These allegations do not state conduct on behalf of any VDOC defendant sufficient to allege a violation of RLUIPA or the Equal Protection Clause. Thus, Defendants' Motion to Dismiss must be granted with respect to Claims I and II.

### D. Claim IV

In Claim IV, Plaintiff alleges that Defendants Clarke, Robinson, Brock, Morris, and Welch's "enforcement of OP 841.3(VIII)(B) and subsequent denial of [Plaintiff]'s request for approval of microscope with slides as an approved NGE item" violated RLUIPA. [Dkt. No. 43 at ¶ 46]. According to Plaintiff, he requires a microscope because NGE adherents are encouraged to learn about topics such as the scientific method, and a microscope would assist in Plaintiff learning about life and single cell organisms. [Dkt. No. 11-1 at 3–4]. Plaintiff characterizes his request for a microscope as "imperative." [Dkt. No. 11-1 at 3].

Defendants persuasively argue that Claim IV must be dismissed because Plaintiff has not plausibly alleged a substantial burden on his religious beliefs. To state a claim under RLUIPA, the plaintiff has the initial burden of establishing that his religious exercise was substantially burdened. See 42 U.S.C. § 2000cc-1(a). Here, Plaintiff has alleged that his religious exercise requires the ability to learn "about the world around us on a sub-atomic level, molecular level, cellular level, etc.," [Dkt. No. 11-1 at 3], and that NGE followers do not rely on "blind faith," but require "scientific proof." [Dkt. No. 43 at ¶ 21]. These allegations fail to establish that the denial of a microscope substantially burdens Plaintiff's religious exercise. At best, these allegations establish that Plaintiff cannot use his *preferred* method to learn about science, which is not sufficient to state an RLUIPA claim, because at a minimum, "the substantial burden test requires that a RLUIPA plaintiff [allege facts indicating] that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." Smith, 502

17

F.3d at 1278. And no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to "pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion." <u>Living Water Church of God</u>, 258 F. App'x at 739. Here, Plaintiff has not alleged that it would violate his religious beliefs to learn about science through other means, such as by reading scientific journals or other literature about the scientific method. In this regard, the Fourth Circuit has declined to find that an inmate demonstrated a substantial burden where prison officials denied his requests for "sacred items," explaining that the inmate failed to demonstrate a substantial burden simply by a "blanket assertion" that the "sacred items were 'necessary' to perform 'well-established rituals.'" <u>Krieger v. Brown</u>, 496 F. App'x 322, 326 (4th Cir. 2012). Similarly, in this case Plaintiff has failed to allege facts plausibly suggesting that the denial of the microscope placed substantial pressure on him to violate his religious beliefs. At most, Plaintiff alleges an inconvenience to his religious exercise, which is not sufficient to state a claim under RLUIPA. Thus, Defendants' Motion to Dismiss must be granted with respect to Claim IV.

### D. Claims V, VI, and VII

Defendants next argue that Claims V, VI, and VII must be dismissed. In Claims V, VI, and and VII, Plaintiff alleges that Defendants violated the Free Exercise Clause, the Equal Protection Clause, and RLUIPA when Defendants failed to provide Plaintiff with required meals[6] on February 22, 2020 prior to and after his fast in observance of Allah's Physical Birth.

---

[6] Plaintiff's allegations are inconsistent about whether Defendants failed to provide only one prescribed meal or multiple meals on the day of Plaintiff's fast. In his original complaint, Plaintiff alleged that he did not receive meals at the "prescribe[d] time" on February 22, 2020. [Dkt. No. 1 at 9]. In the first amended complaint, Plaintiff alleged that he was deprived of only "his breakfast meal," which he alleged denied him his right to observe the fast. [Dkt. No. 11 at 16]. In the second amended complaint, Plaintiff alleged that he was deprived of "meals." [Dkt. No. 43 at 18]. In his informal complaint, Plaintiff complained that he had not received his "breakfast tray" on or about 4:50 a.m. so that he could "observe the fast." [Dkt. No. 11-1 at 30]. The Court will assume for purposes of this motion that Plaintiff did not receive the required meals on February 22, 2020 at the prescribed times.

The only VDOC defendant that Plaintiff alleges had any involvement in these claims is Defendant Brock. [Dkt. No. 43 at ¶¶ 24, 25, 29]. The only specific allegation against Defendant Brock states that Brock had "direct involvement in Jennifer Walker's failure to provide plaintiff with the proscribed meals needed to observe Allah's Physical Birth fast. Ashton Brock sent Jennifer Walker an email regarding the upcoming NGE fast for 2/22/2020." [Dkt. No. 43 at ¶ 29]. Brock's motion to dismiss persuasively argues that Plaintiff's allegations against Brock are conclusory. Brock's argument is buttressed by Plaintiff's grievances, which Plaintiff attached to his pleadings. In his grievance regarding the February 22, 2020 fast, Plaintiff asserted that Shaw, a GEO Group employee not a party to the current Motion to Dismiss, had "denied him his right to fast." [Dkt. No. 11-1 at 28]. Plaintiff assigned no blame to Brock in either his grievance or his complaint. Thus, Plaintiff's allegations against Brock are conclusory and Brock's motion to dismiss Claims V, VI, and VII will be granted.[7]

### E. Defendant Brock

Finally, Defendants argue that Defendant Brock must be dismissed as a party-defendant with respect to all claims in this action because Plaintiff has failed to allege sufficient personal involvement by Defendant Brock. The only remaining claim against the VDOC Defendants in Plaintiff's second amended complaint is Claim III, which alleges that Defendants violated the Equal Protection Clause in denying Plaintiff's request for a microscope as a religious item, [Dkt.

---

[7] Additionally, Plaintiff's conclusory allegation against Brock concerns only the February 22, 2020 fast, and the deprivation of meals for a single day does not substantially burden Plaintiff's religious practice. Plaintiff has not alleged that he was prevented from fasting or that he was somehow forced to eat. See Mbonyunkiza v. Beasley, 956 F.3d 1048, 1054 (8th Cir. 2020) ("[T]here is extensive (but not total) agreement that an isolated, intermittent, or otherwise *de minimis* denial or interruption of an inmate's religiously required diet does not substantially burden his religious beliefs."); Watkins v. Donnelly, 551 F. App'x 953, 960-61 (10th Cir. 2014) (denial of religious meals three times in one day was *de minimis* burden on free exercise rights); Washington v. Afify, 968 F. Supp.2d 532, 538 (W.D.N.Y. 2013) (few isolated deprivations of religiously-mandated food do not give rise to First Amendment claim); Evans v. Jabe, No. 11cv104, 2014 U.S. Dist. LEXIS 6454, at *24 (W.D. Va. Jan. 17, 2014) ("[The plaintiff] fails to establish that his receipt of six incomplete or tardy breakfast trays after daylight fasting began placed a substantial burden on his celebration of Ramadan or participation in the thirty-day fast.").

43 at ¶ 45]. Defendants have not moved to dismiss Claim III as a whole; Defendants Motion to Dismiss only moves to dismiss Defendant Brock as party-defendants to Claim III.

Defendant Brock's argument that he should be dismissed as a party-defendant with respect to Claim III fails to persuade. Plaintiff alleges that he submitted a form requesting the microscope to Defendant Brock, but that Marilyn Shaw, a GEO Group employee who is not a party to the current Motion to Dismiss, disapproved Plaintiff's request. Plaintiff's exhibits further indicate, however, that the Faith Review Committee at LVCC denied Plaintiff's request. The record before the Court at this stage does not indicate who the members of the Faith Review Committee are, nor does the record indicate whether Defendant Brock was a member. Plaintiff alleges that Defendant Brock had "direct involvement in the disapproval of Plaintiff's request" for a microscope. [Dkt. 43 at ¶¶ 29–31]. Thus, Plaintiff's second amended complaint includes the plausible inference that Defendant Brock served on the Faith Review Committee and therefore had direct involvement in denying Plaintiff's request for a microscope. See Carey, 957 F.3d at 474 (in deciding a motion to dismiss, courts must draw "all reasonable inferences in favor of the plaintiff"). Accordingly, Defendant Brock's motion to dismiss will be denied as to Claim III.

## V. Conclusion

For the foregoing reasons, Defendant Clarke and Robinson's motion to be dismissed as party-defendants to this action with respect to all ten claims will be granted. Defendant Brock's motion to be dismissed as a party-defendant is denied with respect to Claim III but granted with respect to all other claims. Furthermore, Defendants' Clarke, Robinson, Brock, Morris, and Welch's Motion to Dismiss Claims I, II, IV, V, VI, and VII will be granted.

Accordingly, the only claim that remains with respect to the VDOC Defendants in this action is Claim III against Defendants Brock, Morris, and Welch. Defendants Brock, Morris, and Welch are directed to file, or explicitly decline to file, an appropriate dispositive motion with respect to Claim III within thirty days of the entry date of this Memorandum Opinion.

An appropriate Order will issue alongside this Memorandum Opinion.

February 10, 2023
Alexandria, Virginia

/s/

T. S. Ellis, III
United States District Judge