# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **James R. Boughton, Jr.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 1:20cv938 (TSE/JFA) |
| ) | |
| **The Geo Group Inc., et al.,** ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION

James R. Boughton, Jr., ("Boughton" or "Plaintiff") a Virginia inmate, has filed a pro se lawsuit under 42 U.S.C. § 1983 alleging violations of his right to equal protection, his First Amendment right to free exercise of his religion, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") while he was in custody at the Lawrenceville Correctional Center ("LVCC"). The second amended complaint raised ten claims and named nine defendants: The Geo Group Inc. ("GEO Group"); five employees of the Virginia Department of Corrections ("VDOC") (Harold Clarke, A. David Robinson, Bernard Morris, Melissa Welch, and Ashton Brock); and three former employees of the GEO Group, Michael Breckon, Marilyn Shaw and Jennifer Walker. [Dkt. No. 43]. On February 9, 2023, the Court issued two Memorandum Opinions. [Dkt. No. 75, 77]. The first concerned the ten claims to the extent those claims alleged the GEO Group and its employees had violated Plaintiff's rights, and the Court granted summary judgment on Claims I through VII, and denied the motion for summary judgment without prejudice with respect to Claims VIII, IX, and X. [Dkt. No. 76]. Regarding the VDOC employees, the Court granted defendant Clarke and Robinson's motion to dismiss with respect to all ten claims; denied defendant Brock's motion to be dismissed as a

defendant; granted defendants Morris, Welch, and Brock's motion to dismiss with respect to Claims I, II, IV, V, VI, and VII; and denied their motion to dismiss Claim III.

The matter before the Court is limited to the motion for summary judgment filled by VDOC defendants Morris, Welch, and Brock. [Dkt. Nos. 80, 81].[1] The motion seeks summary judgment on the remaining claim against the three defendants, Claim III, which alleges in relevant part that the defendants "enforcement of OP 841.3(VIII)(B) and subsequent denial of [Plaintiff]'s request for approval of microscope with slides as an approved NGE item violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." [Dkt. No. 11 at 19-20; and 43 at 28-29] (First and Second Amended Complaints). Plaintiff was advised of his opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and he sought an extension of time that was granted. [Dkt. Nos. 88, 89]. On April 24, 2023, Plaintiff filed a Declaration in Opposition to the Motion for Summary Judgment, a Statement of Genuine Issues of Material Facts, a Response to Defendant Brock's Answer, and a Response to Defendants Welch, Morris, and Brock's Memorandum of Law. [Dkt. No. 91]. Accordingly, this matter is now ripe for disposition. For the following reasons, the motion for summary must be granted.

## I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. In response, Plaintiff has admitted several of the undisputed facts. Where defendant attempts to dispute facts asserted by

---

[1] The GEO Group and defendants Breckon, Shaw and Walker have also filed a motion for summary addressing Claims VIII, IX, and X [Dkt. Nos. 85, 86], which will be addressed in a separate memorandum opinion.

defendants, he often fails to submit any evidence or to point to any portion of the record that disputes the facts set out in the defendants' memorandum of law. The failure to cite to record evidence means that no genuine dispute has been raised. [Dkt. No. 91 at 8].[2] See Hadeed v. Abraham, 265 F. Supp.2d 614, 620 n. 19 (E.D. Va. 2003); Taylor v. CNA Corp., 782 F.Supp.2d 182, n. 1 (E.D. Va. 2010) (holding that where the nonmovant fails "to cite evidence in the record to dispute those facts, the facts ... identified are taken as true"). Plaintiff, as "the non-moving party 'may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995).[3] Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, Plaintiff's responses, and the record.

---

[2] The record of admissible evidence includes the affidavits and exhibits [Dkt. Nos. 49-1 through -8] previously filed, and Plaintiff's sworn pleadings. [Dkt. Nos. 1, 11, 43, 53, 54, 55, 61, 91]. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"). In his response to the VDOC defendants' statement of undisputed facts, Plaintiff now seeks to deny several facts to which he has already sworn to under oath. Such facts, however, are deemed admitted. "[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004); see Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-07 (1999) ("A party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"). Where a party seeks to create a genuine issue of fact by contradicting the party's own sworn statements, a district court may disregard the affidavit in determining whether a genuine issue of material fact exists. Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991).

[3] After the Roseboro notices were sent by the defendants, Plaintiff attempted to engage in discovery with the defendants, as evidenced by the defendants' motion to stay discovery. [Dkt. No. 90]. Plaintiff, however, has filed his several responses and has not filed a declaration indicating he needs further discovery, requested a motion to compel, or otherwise sought discovery from the Court. Plaintiff had already filed 70 pages of exhibits with the original complaint [Dkt. Nos. 1-1 through 1-14], 59 pages of exhibits with the first amended complaint [Dkt. No. 11-1], three additional exhibits in response to the first motion for summary judgment [Dkt. Nos. 73-1 through 73-3]; and an additional exhibit in response to the second motion for summary judgment. [Dkt. No. 91-1]. The Court has considered and reviewed all of his exhibits in connection with the motion for summary judgment.

Further, as is evident from the record, this is the second round of dispositive motions in this civil action and Plaintiff is familiar with the process. In his response to the motion for summary judgment, Plaintiff has not argued any need for discovery or questioned the adequacy of the summary judgment record. Nor has Plaintiff filed any objection or opposition to the defendants' motion for a stay of discovery. The Court is aware of the Fourth Circuit's recent opinion in Shaw v. Foreman, 59 F.4th 121 (4th Cir 2023). There, the Fourth Circuit held that "the district court was on fair notice of potential disputes as to the sufficiency of the summary judgment record. Id. at 129. For the reasons explained above, though, the reasoning of Shaw is not applicable in this case, and the Court will not delay consideration of the defendants' motion for summary judgment. It is also not the case that Plaintiff cannot present

1. Plaintiff has been in custody at LVCC since on or about September 23, 2015. [Dkt. No. 75 at 4, ¶ 1].

2. Plaintiff is an adherent of the Nation of Gods and Earths ("NGE") religious group. [Dkt. No. 43 at ¶ 20].

3. LVCC is operated by GEO Group under a contract with the Commonwealth of Virginia pursuant to the Corrections Private Management Act, Va. Code § 53.1-261 et seq. [Dkt. Nos. 43 at 2, 11; 49-3 at ¶ 4]. As a contract entity, LVCC follows VDOC policy regarding religious activities at the facility. [Id. at ¶ 4].[4]

4. Defendant Brock was a Chaplain with Grace Inside at LVCC in 2019 and until approximately late March 2020, when he retired. [Dkt. No. 57 at ¶ 2]. Defendant Brock has since returned to working as a Grace Inside Chaplain, but at a different institution. [Id.].[5]

5. Defendant Marilyn Shaw, a GEO Group employee, served as the Chief of Housing and Programs at LVCC during the relevant time periods in 2019 and 2020. [Dkt. No. 43 at 11].

---

facts to justify his opposition, see, e.g., Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021), because, as seen herein, he has denied facts to which he has actually sworn to under oath. See, e.g., infra at notes 4, 5, 7.

[4] Plaintiff has "denied" this fact but ignores that he made the factual allegation under oath in his first amended complaint, and again in his second amended complaint. [Dkt. Nos. 11 at 8; Dkt. 43 at 2, 11] ("The GEO Group is under contract with VADOC in charge of operating LVCC ... and is legally responsible for housing during confinement, maintaining sanitary living conditions, fair treatment and providing operations for rehabilitation by way programs and faith based groups while confined at LVCC.").

[5] Plaintiff has "denied" this fact but ignores that he made he swore in his first amended complaint that Brock "is the Chaplain at LVCC, and as such, he is legally responsible for providing inmates at LVCC access to VADOC approved faith based materials, and opportunities to observe and adhere to their faith groups' tenets." [No. 11 at 9]. Plaintiff swore to nearly identical facts in his second amended complaint noting that Brock was then the "former" chaplain: "Defendant Ashton Brock is the former Chaplain at LVCC, and while as such, he was legally responsible for providing inmates at LVCC access to VADOC approved faith based materials, and opportunities to observe and adhere to their faith groups' tenets." [Dkt. No. 43 at 11].

6. The NGE is one of several religious groups approved to operate in VDOC facilities pursuant to VDOC Operating Procedure 841.3 ("OP 841.3").[6] OP 841.3 provides that "all recognized religious groups" at a given facility "are afforded a religious activity for group service and/or study ... and the length of the religious activity is limited not to exceed one and a half hours." Additionally, "[t]he frequency of the activity will be determined by the total number of activity requests which could result in a weekly, bi-weekly, or monthly activity." [Dkt. No. 49-3 at ¶ 5].

7. OP 841.3 provides a list of religious items that have been "approved by the Faith Review Committee" for use in VDOC facilities. [Dkt. Nos. 49-5, 49-6]. OP 841.3 also provides that when an offender requests a religious object that is not on the list of approved items, the Faith Review Committee reviews the offender's request. OP 841.3(II)(C).

8. On or about April 23, 2019, Plaintiff submitted a request for access to a microscope with slides for religious purposes. [Dkt. No. 11-1 at 2]. Defendant Shaw "recommended disapproval based upon security concerns" that the microscope had many individual parts and was a "potential weapon." [Id.]. Shaw's recommendation was forwarded to the Faith Committee. [Id.]. On September 17, 2019, the VDOC Faith Review Committee disapproved the request for the reasons stated by Shaw. [Id. at 1].[7]

---

[6] The defendants submitted a copy of OP 841.3 and attachments showing Religions Approved to Operate in VDOC Facilities, Approved Religious Items, and a Master Religious Calendar. [Dkt. Nos. 49-5, -6, and -7].

[7] In his response to the defendants' statement of facts, Plaintiff asserts he submitted his request for the microscope with slides to "Defendant Brock and Defendant Shaw," and that "Defendant Shaw disapproved this request at level one, without attaching any research information, claiming it was a potential weapon, many individual parts." [Dkt. No. 91 at 8]. It is irrelevant to whom Plaintiff submitted his request because the only entity with the authority to approve his request was the Faith Review Committee. VDOC OP 841.3(II)(C). Likewise, because only the Faith Review Committee could approve his request, Plaintiff's assertion that Defendant Shaw disapproved his request has no basis in fact. Moreover, Plaintiff's sworn original and first amended complaint included the attachments upon which his claim is based. One attachment indicated that Shaw had "*recommended* disapproval based on security concerns" on the request form and that the form was then forwarded to the "Faith Review Committee." [Dkt. Nos. 1-1 at 2; 11-2 at 2] (emphasis added). On the bottom of the form, it indicates the Faith Review Committee denied his request stating its reason was " potential weapon, many moving parts." [Id.]. A second attachment, a letter from the Faith Review Committee and signed by defendant Morris on September 17, 2019, states that the *Faith Review*

5

9.   "Grievances regarding decisions of the Faith Review Committee are appealable to the Chief of Corrections Operations directly from Level I." OP 866.1 (VI)(C)(3)(d).[8]

10.   VDOC Operating Procedure 866.1, Offender Grievance Procedure ("OP 866.1"), sets forth the institutional Grievance Procedure in place at LVCC during 2019 and 2020. [Dkt. Nos. 49-4 at ¶ 6; 49-2].[9] OP 866.1 requires that before submitting a formal grievance, the offender must "demonstrate that he/she has made a good faith effort to resolve the issue informally" through the procedures available at the institution. OP 866.1 (V)(B). "The good faith effort shall be documented using an Informal Complaint." OP 866.1 (V)(B)(1). Responses to Informal Complaints are "made in writing on the Informal Complaint form," and the "Informal Complaint response should be returned to the office that logged it and the response forwarded to the offender." OP 866.1 (V)(E). A staff response to an Informal Complaint "shall be no longer than 15 calendar days to ensure responses are provided prior to the expiration of the 30-day time requirement for an offender to file his/her grievance." OP 866.1 (V)(C). "If 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." OP 866.1 (V)(B)(2).

---

*Committee denied his request* explaining the request was "Disapproved. Potential weapon, many individual parts." [Dkt. Nos. 1-1 at 1; 11-2 at 1]. Plaintiff does not rely upon anything other than the documents he submitted with his sworn complaints, which refute his response.

[8] Plaintiff's denied this fact in conclusory fashion. Again, without evidence or citation to evidence in the record, his dispute is without basis in fact. The regulation was in effect at the time he requested the microscope and his dispute has no merit.

[9] To find the portion of OP 866.1 referred to herein, the version in effect during 2019 and 2020 is attached to the defendants' brief. [Dkt. No. 49-2]. Plaintiff admits in part and denies in part the defendants' assertions of the procedures set forth in OP866.1, but does not provide any specificity as to what he is denying, and he also fails to provide any evidence to contradict the regulation or point to any evidence in the record to support his denial. The regulation was in effect at the time he requested the microscope and thus his dispute has no merit.

11. An inmate must exhaust all of OP 866.1's requirements before he can seek judicial relief. [Dkt. No. 49-2 at 6, OP 866.1 (IV)(O)(1)]. "The exhaustion of remedies requirement will be met only when [a] Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue." (Id., OP 866.1 (IV)(O)(2)(b)).

12. Plaintiff did not submit an Informal Grievance or a Regular Grievance regarding the Faith Review Committee's denial of his request for a microscope. [Dkt. No. 49 at ¶ 28; Dkt. No. 55 at 2].

13. The Faith Review Committee's September 17, 2019 decision was mistakenly delivered to another inmate on September 20, 2019. [Dkt. No. 53 at 2] (citing Informal Complaint No. LVCC-19-INF-03764 and Regular Grievance No. LVCC-19-REG-00-300).

14. Informal Complaint No. LVCC-19-INF-03764 complained about Plaintiff's mail being sent to the wrong inmate on September 19, 2019. As Plaintiff reported in his grievance, Plaintiff learned of the error when the other inmate had the Faith Review Committee's mail delivered to Plaintiff. The informal complaint was received on October 1, 2019 and a response apologizing for the delay in his mail due "to incorrect housing" information was sent on October 14, 2019. [Dkt. No. 49-1 at 10]. The response to the subsequent grievance, complaining about his mail being sent to the wrong housing unit, was sent out on October 30, 2019. The response noted that corrective action would be taken due to a failure of staff to adhere to the policy for mail delivery and determined the grievance was unfounded because the matter had been resolved at the informal complaint level. [Id. at 9-10].

## II. Standard of Review

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. See Celotex, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. See id. at 324. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The non-moving party, however, must show more than some metaphysical doubt as to the material facts. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 256). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. See Anderson, 477 U.S. at 249-50. There must be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. A judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict.

When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, plaintiff is required, if he wants to ward off grant of the motion, to present evidence of evidentiary quality (either admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating existence of genuine issue of material fact; evidence need not be in admissible form, but it must be admissible in content, in sense that change in form but not in content, would make evidence admissible at trial. See Celotex, 477 U.S. at 324. Hearsay "is neither admissible at trial nor supportive of an opposition to a motion for summary judgment." Greensboro Professional Firefighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Such "second-hand" information learned from others fails to satisfy a plaintiff's burden "to survive a motion for summary judgment." Monk v. Potter, 723 F. Supp. 2d 860, 875, 878 (E.D. Va. 2010) (citing Greensboro, 64 F.3d at 967; Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1121 (10th Cir. 2007) (noting statements conveyed to plaintiff were "second-hand" and inadmissible hearsay in opposition to summary judgment); Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 89-90 (D.D.C. 2006)

(purported events related by plaintiff in her own deposition were based on second-hand information rather than personal knowledge and were therefore inadmissible hearsay for summary judgment purposes); Fed. R. Civ. P. 56(e) (supporting or opposing summary judgment affidavits must be based on "personal knowledge")).

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83–84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added); see Graham v. Gentry, 413 F. App'x 660, 662-63 (4th Cir. 2011) (emphasis

10

added) (the PLRA requires an inmate "to exhaust any "available" administrative remedies *before* pursuing a § 1983 action in federal court). The requirement that a prisoner exhaust before filing in court "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519. Although the PLRA does not define the term "available," "courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

VDOC regulations allow inmates to grieve the denial of matters that "affect the grievant personally" and defines a grievable matter as follows:

> a. Procedures of the facility, region, division, and department which affect the grievant personally
>
> b. Actions of individual employees and/or offenders which affect the grievant personally, including any denial of access to the grievance procedure
>
> c. Reprisals against the grievant for filing a grievance or grievance appeal
>
> d. Issues concerning the DOC's administration of the Interstate Compact Agreement which affect the grievant personally
>
> e. Any other matters relating to conditions of care or supervision within the authority of the DOC which affect the grievant personally

OP 866.1(IV)(M)(1); [Dkt. No. 49-2 at 5]. A decision of the Faith Review Committee falls within the definition of a grievable matter. OP 866.1 expressly references decisions of the Faith Review Committee stating such decisions "are appealable to the Chief of Corrections Operations directly from Level I." OP 866.1(IV)(C)(3)(d); [Dkt. No. 49-2 at 10]. There is no genuine argument that the denial of Plaintiff's request was not a grievable matter.

Plaintiff did not file either an informal complaint or a regular grievance regarding the denial of his request for a microscope.[10] Plaintiff argues: (1) that the denial of his request was mishandled and the decision was mistakenly given to another inmate delaying his receipt of the response; (2) that he did not know he could grieve the decision of the Faith Review Committee; and (3) that he was confused by "the rule" which he describes as misleading. [Dkt. No. 55 at 3-4]. Plaintiff, however, indicated in his first amended complaint that he had exhausted his remedies with respect to the microscope by seeking approval by the Faith Review Committee after defendant Shaw did not approve the request and did not assert he was confused or that he had been prejudiced by the alleged delay. [Dkt. Nos. 11 at 13-14; 43 at 24]. That assertion was incorrect.

Moreover, as noted above, the Plaintiff received the Faith Review Committee's decision, even though it was mistakenly given to the wrong inmate, on or about October 1, 2019, the date he filed his informal complaint about the mistake in the delivery of his letter was sent. See, supra at 7.[11] Plaintiff had sufficient time to file an informal complaint and regular grievance in a timely manner regarding the decision of the Faith Review Committee. Thus, even though the September 17, 2019 decision was initially delivered to the wrong inmate, the grievance procedure was plainly available to Plaintiff if he had chosen to pursue it. The mistake in not filing an informal complaint and grievance challenging the September 17, 2019 decision of the Faith Review Committee is attributable to Plaintiff, and not any conduct of the defendants or others.

---

[10] OP 841.3 provides that the Faith Review Committee reviews requests for religious objects that are not on the already approved list of items. OP 841.3(II)(C); [Dkt. 49-5 at 5]. Plaintiff attached a copy of the approved items list to his first amended complaint. [Dkt. No. 11-1 at 57-59].

[11] In his grievance, Plaintiff reported that he learned of the error when the inmate who received Plaintiff's mail had the mail delivered to Plaintiff. Therefore, Plaintiff learned of the Faith Review Committee's decision well before the time for filling a grievance had expired.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Dkt. No. 80] is granted with respect to Claim III; and the motion to stay [Dkt. No. 90] is denied as moot. An appropriate Order will issue alongside this Memorandum Opinion.

Entered this 6th day of July, 2023.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge